Points Decided.

(February 3, 1914.)

# J. O. BAKER, Plaintiff, v. GOODING COUNTY et al., Defendants.

[138 Pac. 342.]

COMMISSIONERS—POWERS OF—ROAD BOND ELECTION—HIGHWAY DISTRICTS—HIGHWAY COMMISSIONERS—POWERS AND JURISDICTION OF—HIGHWAY DISTRICT LAW—CONSTRUCTION OF—PROHIBITION—REMEDY.

1. Under the provisions of the highway district law, the board of county commissioners cannot legally call an election for the voting of highway bonds upon their county with the understanding and arrangement to apportion the proceeds of the sale of such bonds among the several highway districts of the county.

2. Under the provisions of sec. 15 of said highway district law, the highway commissioners in such highway district constitute the highway board and have, except as provided in sec. 64 of said act, exclusive general supervision and jurisdiction over all highways within their district, with full power to construct, maintain, repair and improve all highways therein.

3. Sec. 17 of said act provides, in respect to highways included within such districts, that the power and jurisdiction of the highway board shall be exclusive except as provided in sec. 64 of said act, and precludes the county commissioners from exercising general supervision and jurisdiction over such highways.

4. Sec. 65 of said act provides, among other things, that after the organization of such district, the highway board shall have exclusive power to levy and apply all road, bridge and highway taxes within the district except in respect to general county taxes as provided in sec. 37 of said act, and in respect to local municipal taxation as provided in sec. 64 of said act, and also in respect to any taxing power within the state.

5. The provisions of sec. 882b (Sess. Laws 1911, p. 167) except from the jurisdiction of the board of county commissioners those highways situated in highway districts.

6. Under the provisions of the highway district law, the board of county commissioners could not expend the proceeds obtained from the sale of the bonds involved in this case on highways included in highway districts.

7. Under the provisions of sec. 882b, the board of county commissioners are given power to construct or repair, with the consent

of the corporate authorities of any municipality within the county, any highway within such municipality upon such division of the cost thereof as may be agreed upon, or join with the state or any body politic or political subdivision thereof in the construction or repair of any highway, and to contract for an equitable division of the costs thereof.

8. That section gives the board of county commissioners power to construct or repair certain highways with the "consent" of the corporate authorities that control such highways, and also to contract for an equitable division of the cost thereof.

9. The highway district law does not contemplate the raising of money for the purpose of constructing or repairing highways in highway districts by voting bonds on the entire county and then leaving it with the board of county commissioners to apportion the proceeds of such bonds to the several highway districts.

10. *Held,* that the writ of prohibition would lie in this case.

11. The case of *Stein v. Morrison,* 9 Ida. 426, 75 Pac. 246, cited and distinguished.

12. *Held,* that the writ of prohibition lies to restrain county commissioners from proceeding in cases without or in excess of their jurisdiction.

Original proceeding in this court for a writ of prohibition prohibiting the board of county commissioners of Gooding county from proceeding to sell road bonds and to distribute the proceeds thereof proportionately among the several highway districts of said county. Peremptory writ of prohibition granted.

Hawley, Puckett & Hawley and O. W. Worthwine, for Plaintiff.

The county cannot dispose of its funds except in certain authorized ways. If Gooding county attempted to turn over any part of the proceeds of this bond issue to a highway district, any taxpayer in that county could restrain such act. (*Miller v. Smith,* 7 Ida. 204, 61 Pac. 824; *Dunbar v. Canyon County Board of Commrs.,* 5 Ida. 407, 49 Pac. 409.)

In this case the issuance of the bonds is a *quasi*-judicial act. No one can compel the county to sell or negotiate the bonds. (Secs. 1960, 1962, Rev. Codes.)

Courts do not make nice distinctions as to the character of the act under consideration. (*Robinson v. Sacramento,* 16 Cal. 208; *People v. Supervisors of El Dorado County,* 8 Cal. 58; *People v. Supervisors of Marin County,* 10 Cal. 344; *Connecticut River Ry. Co. v. Franklin County Commrs.,* 127 Mass. 50, 34 Am. Rep. 338.)

P. T. Sutphen and W. G. Bissell, for Defendants.

The act of issuing and selling county bonds by the board of commissioners of Gooding county is a purely ministerial act. (*Stein v. Morrison,* 9 Ida. 426, 75 Pac. 246.)

A writ of prohibition can only issue to restrain courts of inferior jurisdiction, and cannot issue to restrain purely ministerial acts. (*Spring Valley Water Works v. City and County of San Francisco,* 52 Cal. 111; *People v. Board of Election Commrs.,* 54 Cal. 404.)

The test for determining whether an attempted exercise of authority may be arrested by a writ of prohibition is to inquire whether the act is ministerial or judicial in its nature. If it is ministerial, the writ cannot be maintained. (*State v. Clark County Court,* 41 Mo. 44; *Hockaday v. Newsom,* 48 Mo. 196; *Dobson v. Westheimer,* 5 Wyo. 24, 36 Pac. 626.)

The writ of prohibition will not lie against boards of county commissioners, boards of supervisors, highway commissioners, city councils, etc., when they are acting in their ministerial or legislative capacity. (*La Croix v. Fairfield Co. Commrs.,* 49 Conn. 591; *Board of Education v. Holt,* 51 W. Va. 435, 41 S. E. 337; *Town of Hawks Nest v. County Court,* 55 W. Va. 689, 48 S. E. 205.)

Officers of election and election commissioners having the supervision of elections are deemed ministerial in their functions, and hence not subject to the writ of prohibition in reference to acts done in calling and preparing for elections. (*People v. Board of Election Commrs.,* 54 Cal. 404; *Kemp v. Ventulett,* 58 Ga. 419; *Lemon v. Peyton,* 64 Miss. 161, 8 So. 235.)

SULLIVAN, J.—This is an original application to this court for a writ of prohibition to restrain the board of county commissioners of Gooding county from selling or disposing of a bond issue of $160,000.

It is alleged in the affidavit or complaint that there are four highway districts in Gooding county, including within their boundaries five sixths of the taxable property of that county, as well as about two thirds of the electors of said county; that the said several highway districts were contemplating bond issues of their own, and on the 23d day of September, 1913, the board of county commissioners issued a notice of election to be held on the 18th of October, 1913; that said resolution was not voted upon and that the records of the board of county commissioners show that fact; that the notice does not recite the decision of the board to bond said county, and that the notice does not state the purpose of said bond issue; that on the 13th day of October, 1913, said board passed a resolution stating that if the bond issue carried, the proceeds of said bonds would be distributed upon a sale thereof among the highway districts of Gooding county. Said resolution is as follows:

"Whereas, the people of Gooding County are to vote on the proposition of a road bond in the amount of $160,000, and in the event the bond should carry:

"Be it resolved by the Board of County Commissioners that the proceeds be divided among the organized Highway Districts as now organized, or to be organized, in the proportion to the valuation of said Districts and that said monies so apportioned shall be turned over to said Highway Districts immediately upon said bonds being sold and the monies received therefor by Gooding County, Idaho, to be used by said Highway Districts as they shall see fit and all monies apportioned to unorganized territory on the same basis and spent by the Board of County Commissioners in said unorganized territory."

It is also alleged that said resolution induced the electors of Gooding county to vote favorably upon said bond issue, and

had it not been for said resolution the bond issue would have been defeated.

The alternative writ of prohibition was issued and upon return day thereof the defendants filed their answer, wherein was set forth the entire proceedings of said board in regard to the calling of said bond election and the result thereof.

Said election resulted in favor of the bond issue by a vote of 849 in favor of and 83 against the bonds. The board thereafter advertised for bids for the purchase of said bonds and thereafter a number of bids were made for the purchase of said bonds, and the bid of John Nuveen & Co. offering to purchase said bonds at par was accepted, said bonds to bear interest at the rate of five per cent. Thereafter said board met and took up the matter of the distribution of the money to be received from the sale of said bonds and adopted a form of contract or agreement between Gooding county and each of said highway districts, whereby it was proposed to distribute said proceeds in accordance with the resolution passed by said board and above set forth. At that stage of the proceedings the alternative writ of prohibition was issued by this court, directed to said board of county commissioners.

Counsel for the plaintiff contends: (1) That the board of county commissioners at their meeting of September 23, 1913, did not vote upon the proposition to bond the county, and for that reason the bond issue was vitiated; (2) that the notice of election as printed and posted was defective in that it does not recite the action of the board in deciding to bond said county; that the notice is not clear as to the amount of bonds that were to be issued, and that said notice does not specify the particular roads and bridges to be constructed or repaired; (3) that the resolution of October 13, 1913, avoids the election, for it must be regarded either as an additional notice or an inducement; (4) that the county commissioners cannot legally turn over the funds obtained from the sale of these bonds to the highway districts; (5) that the money obtained from the sale of said bonds must be spent in Gooding county and in that portion of Gooding county outside of the organized highway districts; (6) that under the peculiar facts in

this case it cannot be held that the election of October 18, 1913, was a free, fair expression of the desires of the people of Gooding county; (7) that prohibition is the proper remedy.

In our view of this case, it will not be necessary for us in this opinion to take up and decide each of the points above suggested. From the whole record it appears that said bond election would not have carried had the electors understood that the board of county commissioners had no authority under the law to distribute the proceeds of said bonds among the several highway districts as proposed by said resolution of October 13th, and since it clearly appears that said bond election would have been defeated had the electors understood that the proceeds of the bonds could not under the law be equitably distributed among the several highway districts as proposed by said resolution, in order to determine whether under the law the board of county commissioners can call an election for the issuance of such bonds for the purpose of distributing the proceeds thereof equitably between the highway districts, we will be required to examine and construe the law involved in this proceeding.

Chap. 55 of the Laws of 1911, p. 121, contains an act which provides for the organization and government of highway districts, known as the highway district law. Said act is a very comprehensive one, containing 67 sections, the first section of which provides that "The improvement of highways is hereby declared to be the established and permanent policy of the state of Idaho." The 15th section provides, among other things, as follows:

"The highway commissioners in such highway district shall constitute the Highway Board, and shall have, except as provided in Section Sixty-four (64) of this Act, exclusive general supervision and jurisdiction over all highways within their district, with full power to construct, maintain, repair and improve all highways within the district, whether directly by their own agents and employees or by contract; and except as otherwise provided in this Act, shall have, in addition to the powers and duties conferred by this Act, in respect to the highways within such district all of the powers and

duties that would by law be vested in the county commissioners of the county and in the district road overseers if such highway district had not been organized. Said board shall also have power to manage and conduct the business and affairs of the district; make and execute all necessary contracts; have an office and employ and appoint such agents, attorneys, officers and employees as may be required, and prescribe their duties and fix their compensation."

Sec. 17 is as follows: "In respect to all highways included within such district, the power and jurisdiction of the Highway Board shall be exclusive, except as provided in Section Sixty-four (64) of this Act."

Those sections give to such highway commissioners exclusive general supervision and jurisdiction over all highways within their districts except as provided in sec. 64 of said act, and preclude the county commissioners from entering into such highway districts for the purpose of building or repairing roads or bridges.

Sec. 65 of said highway district law provides, among other things, that from and after the organization of such districts, any highway board shall have exclusive power to levy and apply all road, bridge and highway taxes within the district, except in respect to the general county taxes, as provided in sec. 37 of said act, and to local municipal taxation, as provided by sec. 64 of said act. Sec. 882b (Sess. Laws 1911, p. 167) also excepts from the jurisdiction of the board of county commissioners those highways situated in highway districts.

Clearly, under the law, the county commissioners cannot expend the proceeds obtained from the sale of said bonds in the territory embraced in the highway districts. Since it appears from the record that about four fifths of the territory of said county is organized into four highway districts, if the board of county commissioners expend said $160,000, they must expend it on the highways of one fifth of the territory of said county, since they have no jurisdiction or supervision over the construction of highways within highway districts.

But it is contended by counsel for the defendants that this money may be spent in organized highway districts under the provisions of sec. 882b above referred to, since it is therein provided that certain contracts may be made by and between the board of county commissioners and a highway district. Under the provisions of said section, boards of county commissioners are given the power, among other things, "to construct or repair, with the consent of the corporate authorities of any municipality within the county, any highway within such municipality upon such division of the cost thereof as may be agreed upon; or to join with the state, or any body politic or political subdivision thereof, or with any person or corporation in the construction or repair of any highway and to contract for an equitable division of the cost thereof; and all counties, cities, towns, villages, highway districts and other bodies politic and political subdivisions are hereby authorized to contract with any county, acting through its board of county commissioners in exercise of the powers herein granted."

That section gives the board power to construct or repair, with the consent of the corporate authorities, any highway within such municipality upon such division of the cost thereof as may be agreed upon, and to contract for an equitable division of the cost thereof. It provides that the board of county commissioners may construct or repair, with the consent of the corporate authorities; that is, the village, city, town or highway district. The board cannot enter upon a scheme or plan for repairing or constructing highways in a highway district without the consent of the district. It was held in *Reinhart v. Canyon County*, 22 Ida. 348, 125 Pac. 791, that under the highway district act and the provisions of sec. 887a, Rev. Codes, as amended by Sess. Laws 1911, p. 168, in case the construction, maintenance, repair or improvement of any highway, or portion thereof, within a county, and not included in a highway district, would also be a benefit to such district, the highway district and the board of county commissioners have power to contract each with the

other for a division and apportionment of the cost of the construction thereof.

The highway district act does not contemplate the raising of money for the purpose of constructing and repairing highways in highway districts by voting bonds upon the entire county and then leaving it with the board of county commissioners to apportion the proceeds of the sale of such bonds to the several districts. If that could be done, a highway district that did not desire to issue any bonds might be compelled to do so by other districts in the county. For instance, a district desiring to issue bonds might be almost unanimously in favor of it and another district containing a less number of electors might be opposed to issuing bonds, but in the combined vote of the two districts, sufficient votes might be obtained to carry the election for the issuance of the bonds. The highway district act does not contemplate that bonds shall be forced upon one district through the voters in another or by electors living in a portion of the county not included in a highway district. It is not contemplated by that act that other parts of the county not included in a highway district shall vote a tax or bond on such district for the construction, repair or improvement of the highways of the district. Said bond election, if held valid, would result in doing the very thing that said act in effect prohibits. The county commissioners have exclusive jurisdiction over the highways within their county outside of highway districts, but have not exclusive jurisdiction, or, in fact, any jurisdiction at all, as to the construction and repair of highways in such districts. To permit the board of county commissioners to call a bond election, as was done in this case, and to sell the bonds voted at such election and to apportion and divide the proceeds between the several highway districts, would permit the board to do indirectly what it is prohibited from doing directly, under the provisions of said act.

We therefore conclude that the board had no authority under the law to sell said bonds and apportion the proceeds thereof among the several highway districts in said county.

Another question presented is as to whether prohibition is the proper remedy. It is contended by counsel for the defendants that this court held in *Stein v. Morrison,* 9 Ida. 426, 75 Pac. 246, that prohibition does not lie to restrain a ministerial act. There is a clear distinction between that case and the case at bar. In that case the bonds were directed to be issued pursuant to an act of the legislature known as the deficiency act. (Sess. Laws 1903, p. 308.) The act set forth in detail certain claims against the state that were due and owing by the state, and then provided that "bonds shall be issued in payment thereof." This made the duty mandatory upon the defendants in that case. They had no discretion in the matter. It was a ministerial act that they were to perform at the command of the legislature.

The case at bar brings to view the entire proceedings of the board of county commissioners relative to calling the bond election, the canvass of the vote, the notice inviting bids for the bonds, the passing upon such bids and determining which bid should be accepted, the issue of the bonds and the division of the proceeds. The board of commissioners is possessed of certain judicial, legislative and ministerial functions, and in the proceedings involved in this case all three of said functions were used. When the term "judicial" is applied to the action of such boards, it is not to be received in the same sense usually applied to courts. It was said in *Robinson v. Sacramento,* 16 Cal. 208: "It is sufficient if they are invested by the legislature with power to decide on the property or rights of the citizen. In making their decision they act judicially, whatever may be their public character." In *People v. El Dorado County Supervisors,* 8 Cal. 58, the court said: "The word 'supervisors,' when applied to county officers, has a legal signification. The duties of the officer are various and manifold; sometimes judicial, and at others, legislative and executive. From the necessity of the case, it would be impossible to reconcile them to any particular head, and, therefore, in matters relating to the police and fiscal regulations of counties, they are allowed to perform such duties as

may be enjoined upon them by law, without any nice examination into the exact character of the powers conferred." (See, also, *People v. Marin County Supervisors,* 10 Cal. 344.)

In *Connecticut River Ry. Co. v. Franklin County Commrs.,* 127 Mass. 50, 34 Am. Rep. 338, the court held that the writ of prohibition lies to restrain county commissioners from proceeding in excess of their jurisdiction. (See, also, *State ex rel. Cain v. Toomey,* 27 S. D. 37, Ann. Cas. 1913D, 324, 129 N. W. 563.)

It is conceded by counsel for the plaintiff that if the terms of the resolution of October 13, 1913, for the distribution of the proceeds of the sale of said bonds can be carried out and proportionately distributed between the several highway districts of said county and expended under the direction of the governing boards, it would be satisfactory to the plaintiff. But counsel contends that under the law such a distribution cannot be made. The court, however, is fully satisfied that the board of county commissioners has no authority to proceed as it has done in this matter, and that this court under the highway district law has no authority to compel the board of county commissioners to distribute the funds that would arise from the sale of said bonds between the several districts in said county as proposed by said resolution, and we conclude that the peremptory writ of prohibition must be issued in accordance with the prayer of the complaint, and it is so ordered. Costs in favor of the plaintiff.

Stewart, J., concurs.

AILSHIE, C. J., Concurring.—I concur in the opinion by Mr. Justice Sullivan and in addition to what he has said desire also to call attention to the fact that the notice of election in this case was invalid and void for failure to state the *purpose* for which the money realized from the bond issue should be used. The notice should have stated the particular roads or bridges to be repaired or constructed and the amount to be used on each. (See *Howard v. Independent School Dist.,* 17

Ida. 537, 106 Pac. 692; *Corker v. Village of Mountainhome,* 20 Ida. 32, 116 Pac. 108; *Platt v. City of Payette,* 19 Ida. 470, 114 Pac. 25; *Independent Highway, Dist. v. Ada County,* 24 Ida. 416, 134 Pac. 542.)