Day, J.
 

 The questions presented for our determination are: (1) Whether it is the legal duty of the mayor and of the director of finance to sign and deliver unvoted general obligation city bonds when the annual millage pledged to service outstanding unvoted general obligation bonds is in excess of ten mills, in any one year; (2) Whether the constitutional ten-mill tax limitation constitutes an indirect debt limitation; (3) Whether, in computing the number of mills already pledged, it is necessary to take into consideration the number of mills required to service outstanding special assessment bonds and other unvoted general obligation bonds which are in practice serviced from sources of revenue other than general taxation; and (4) Whether outstanding unvoted bonded indebt
 
 *275
 
 edness of all overlapping political subdivisions shall be included in determining whether the proposed bond issue is within the ten-mill limitation.
 

 This court has frequently announced the doctrine that the writ of mandamus will not issue unless there is a plain dereliction of duty on the part of a public officer. The court finds no such dereliction in this case. There is no legal duty reposing upon respondents to sign unvoted general obligation city bonds when the annual millage pledged to service outstanding unvoted general obligation bonds is in excess of ten mills.
 

 Section 2293-8, General Code, requires that bonds issued by municipalities shall be signed by the mayor and by the auditor, or such other officer as may be designated to sign by an ordinance, which, in this proceeding, provided that the mayor and director of finance should sign the proposed bond issue. Those officers having declined to sign the bonds, mandamus is a proper remedy to compel them to perform that specific duty, if the proposed bond issue does not contravene the constitution or laws.
 

 Relator contends that it has a legal right, within the ten-mill tax limitation, to issue the proposed bonds as unvoted general obligation bonds of the city of Portsmouth, Ohio; that the special assessments and water works bonds maturing in 1935 will be excluded from the debt charges thereafter; that 1935 is the year in which the maximum millage will be required, and should not, therefore, be taken into consideration.
 

 This contention we cannot support. The requirements for 1935 must be included in the computations. “The aggregate amount of taxes that may be levied on any taxable property in any subdivision or other taxing unit of the state shall not in any one year exceed ten mills of each dollar of tax valuation of such subdivision or other taxing unit, except taxes specifically authorized to be levied in excess thereof. * * *”
 
 *276
 
 Section 5625-2, General Code. It will be observed that there is no exception made of the first year of a bond issue. On the contrary, the phrasing “in any one year” clearly includes each and every year of such bond issue.
 

 Before an issue of general obligation bonds of the city can be valid, provision must be made, in the legislation under which such indebtedness is incurred, for levying and collecting annually by taxation an amount sufficient to pay the interest on such bonds, and to provide a sinking fund for the final redemption at maturity. “No bonded indebtedness of the state, or any political subdivisions thereof, shall be incurred or renewed, unless, in the legislation under which such indebtedness is incurred or renewed, provision is made for levying and collecting annually by taxation an amount sufficient to pay the interest on said bonds, and to provide a sinking fund for the final redemption at maturity.” Section 11, Article XII, Ohio Constitution.
 

 Such provision, however, cannot legally be made if the proposed taxation, when added to the taxation already existing, exceeds one per cent of the valuation of the taxable property. It is admitted that if the year 1935 is included in the computations, as it must be, provision for payment cannot be made within the ten-mill tax limitation. Unvoted general obligation bonds thus issued (%. <?., outside of the ten-mill tax limitation) would be in violation of law and consequently stricken with nullity. Under such circumstances, no duty reposed upon respondents to sign bonds thus undertaken to be issued.
 

 Coming now to the question whether the constitutional ten-mill tax limitation constitutes an indirect debt limitation. We must here make a distinction between a constitutional provision imposing a debt limit and one imposing a tax limit. In the absence of a specific tax limitation, a constitutional provision limit
 
 *277
 
 ing the power to create debts does not operate as a limitation on the taxing power of a municipality. However, a constitutional provision imposing a tax limit, by implication, does impose a debt limit, on the theory that the greater includes the lesser, that the power to spend is circumscribed by the power to collect.
 

 We hold that the electorate of the state, in placing the constitutional limits upon the power of a municipality to tax, by implication also limited the power of a municipality to incur debts. As if to give effect to this implied intention of the electorate, the Legislature enacted Section 2293-14, G-eneral Code, which provides in part that: “The net indebtedness created or incurred by a municipal corporation without a vote of the electors, shall never exceed one per cent of the total value of all property in such municipal corporation as listed and assessed for taxation.”
 

 The power of the tax-spender has been definitely limited by the tax-payer. The power of a municipality to borrow is now definitely limited. A municipal corporation cannot incur an indebtedness beyond the limits imposed by law, without a vote of approval by the duly qualified electors residing within its territorial confines.
 

 We now come to the question whether, in computing the number of mills already pledged, it is necessary to take into consideration the number of mills required to service outstanding special assessment bonds and other unvoted general obligation bonds which are in practice serviced from sources of revenue other than general taxation.
 

 We answer in the affirmative. We are here concerned with questions of right and not with questions of practice. Even though outstanding special assessment bonds and unvoted general obligation bonds are in practice serviced from soqrees of revenue other than taxation, they are obligations of the municipality
 
 *278
 
 nevertheless. If for any reason such bonds can no longer be serviced from such outside sources of revenue, the municipality has a clear legal right to resort to the method of collecting revenue from taxation in order to meet the payments due on such obligations. A municipality has such right, regardless of the fact whether it be used or not.
 

 Where a political subdivision has in its treasury funds which were collected from special assessments or the operation of a publicly owned utility, such available funds may be used to reduce the millage necessary for unvoted outstanding bonded indebtedness required for such purposes.
 

 The answer of respondents raises the issue whether the unvoted bonded indebtedness of the relator and overlapping political subdivisions must be taken into consideration in ascertaining a tax rate within the constitutional limitation. The ten-mill Mmiitation prescribed by the constitution is the pole star or starting point for the computation of any rate of taxes for unvoted obligations or current operating expenses. Unless overlapping political subdivisions were included in a computation, the constitutional limitation might easily be overstepped. This court is, therefore, of the opinion that in calculating the ten-mill limitation in this case, the outstanding unvoted bonded indebtedness of the school district, which is the only overlapping political subdivision having such an indebtedness, should be included.
 

 Holding these views, we overrule the demurrer and deny the writ.
 

 Writ denied.
 

 Weygandt, C. J., Stephenson, Williams, Jones and Matthias, JJ., concur.
 

 Zimmerman, J., dissents.