190 P.2d 685

## HUBBARD et al. v. BOARD OF COM'RS OF BANNOCK COUNTY et al.

### No. 7397.

Supreme Court of Idaho.

Feb. 24, 1948.

142

B. A. McDevitt, of Pocatello, for appellants.

H. F. McQuade, Pros. Atty., C. M. Jeffery, and Carl C. Christensen, all of Pocatello, for respondents.

GIVENS, Chief Justice.

Bannock County by a duly called and regularly held election, authorized a million-dollar bond issue to provide a hospital, hospital grounds and other necessary buildings and equipment, consisting of a main hospital at Pocatello for $900,000 and two receiving hospitals, one at Downey and one at Grace, for $50,000 each.

Appellants insist Section 30-3301, I.C. A.,[1] as amended by Chapter 66, S.L.1941, p. 127, limits the amount of such bonds that may be issued under Section 30-3302, I.C. A.,[2] as providing the only interest and sink-

[1] "The boards of county commissioners in their respective counties shall have the jurisdiction and power under such limitations and restrictions as are prescribed by law,

"(1) To care for and maintain the indigent sick or otherwise dependent poor of the county and for this purpose said boards are authorized to levy an ad valorem tax not exceeding three mills on the dollar on all taxable property in the county.

"(2) To provide public general hospitals for indigents of the county and others who are sick, injured or maimed and to erect, enlarge, purchase, lease, or otherwise acquire and to officer and maintain hospitals, hospital grounds, nurses' homes, superintendent's quarters, or any other necessary buildings, and to equip the same, and for this purpose said

boards may levy, an additional tax of not to exceed one and one-half mills on the dollar on all taxable property in the county." Section 30-3301, I.C.A. as amended.

[2] "The county commissioners may, when they deem the welfare of their counties requires it, and when petitioned thereto by a number of resident taxpayers of their respective counties equal to thirty per cent of the number of persons voting for the secretary of state of the State of Idaho, at the election next preceding the date of such petition, submit to the qualified electors of said county at any general election the proposition whether negotiable coupon bonds of the county to the amount stated in such proposition shall be issued and sold for the purpose of providing such hospital, hospital grounds, * * * nurses'

ing fund retirement therefor and that the levy thereby authorized on the assessed valuation of Bannock County of $28,000,-000 would only raise $42,000—insufficient to pay the interest and retire the principal in twenty years.

■ Upon demurrer and stipulation, the trial court correctly held Section 30-3301, I.C.A. was not a limitation on Section 30-3302, I.C.A., because, first; Section 30-3301, I.C.A., does not by express terms limit bonds issued under Section 30-3302, I.C.A. Second; the last paragraph in Section 30-3302, I.C.A., the only connecting link between the two Sections—though providing that funds derived from the levy under Section 30-3301, I.C.A., are to go into the bond sinking fund—does not provide that such contribution is the *exclusive* method for the payment of such bonds, which is significant and under similar circumstances held to be controlling. Lloyd Corporation v. Bannock County, 53 Idaho 478, at page 485, 25 P.2d 217. Third; Section 30-3301, I.C.A., does not by implication limit the amount of bonds authorized by Section 30-3302, I.C.A., State v. Robb, 143 Kan. 527, 55 P.2d 815. Fourth; such last paragraph in Section 30-3302, I.C.A. was eliminated therefrom by the amendment thereof, Chapter 116, S.L.1945, p. 179, in force when the bonds were voted. Fifth; appellants' construction of Section 30-3301, I.C.A., would make it out of harmony, if not in conflict, with Section 55-211, I.C.A.,[3]

---

homes, superintendent's quarters, or any other necessary buildings, and equipment, and may on their own initiative submit to the qualified electors of the county at any general election the proposition whether negotiable coupon bonds of the county to the amount stated in such proposition shall be issued and sold for the purpose of providing for the extension and enlargement of existing hospital, hospital grounds, * * * nurses' homes, superintendent's quarters, or any other necessary buildings, and equipment, and when authorized thereto by two-thirds vote at such election, shall issue and sell such coupon bonds and use the proceeds therefrom for the purposes authorized by such election. Said proposition may be submitted to the qualified electors at a special election called for the purpose if the board of county commissioners shall by resolution so determine. No person shall be qualified to vote at any election held under the provisions of this section unless he shall possess all the qualifications required of electors under the general laws of this state and is a taxpayer in such county.

"The board shall be governed in calling and holding such election and in the issuance and sale of such bonds, and in the providing for the payment of the principal and interest thereon * * * by the provisions of section 30-1401 to 30-1409, inclusive, of the Idaho Code and by the provisions of the 'Municipal Bond Law' of the State of Idaho, Chapter 2 of Title 55, Idaho Code Annotated, as amended." Section 30-3302, I.C.A., as amended, Laws 1945, c. 116.

[3] "The bonds of any one issue shall mature and be payable upon an annual amortization plan, the first annual amortized principal payment shall mature and be payable at the expiration of two years from and after the date of issue, and the various annual maturities shall, as nearly as practicable, be in such principal amounts as will, together with the accruing interest on all outstanding bonds of such issue, be met and paid

made applicable to such bond issue by the 1945 amendment of Section 30-3302, I.C.A.

Appellants argue if Section 30-3301, I.C. A., is not held to be a limitation, it is meaningless and there is no limit to the amount of such a bond issue. In the first place, Section 30-3301, I.C.A., does not have to be construed as a limitation to have meaning, because it provides for an annual levy for the furnishing, upkeep, etc. of a hospital and likewise, if sufficient, could be used to provide for a hospital. Second; no provision of the Constitution or statute has been called to our attention which places a limitation upon the amount of bonds that may be voted by a county for hospital purposes.

 Only one "purpose," though including three units or structures, was in the call for the election, thus complying with Article VIII, Section 3 of the Idaho Constitution. Independent Highway Dist. No. 2 of Ada County v. Ada County, 24 Idaho 416, 134 P. 542; Baker v. Gooding County, 25 Idaho 506, 138 P. 342; Howard v. Independent School Dist. No. 1, 17 Idaho 537, 106 P. 692; Forward et al. v. San Diego County et al., 190 Cal. 202, 211 P. 458; Dancy v. Davidson, Tex.Civ.App., 183 S.W.2d 195.

Section 30-3301, I.C.A., is, therefore, not a bar to the issuance and negotiation of the bonds heretofore voted by the citizens of Bannock County, and the judgment is affirmed. Costs awarded to respondents.

BUDGE, HOLDEN, MILLER, and HYATT, JJ., concur.

---

by an equal annual tax levy for the payment of the principal of said bonds and interest thereon during the term for which such bonds shall be issued: provided, that it shall not be necessary to prescribe such amortized annual maturities in any bond issue until the interest rate to be borne by such bonds shall have been ascertained upon and after the sale thereof." Section 55-211, I.C.A.