[Civ. No. 8324. Fourth Dist., Div. Two. Apr. 21, 1967.]

LOLA TRUMBO et al., Plaintiffs and Appellants, v. CRESTLINE LAKE ARROWHEAD WATER AGENCY et al., Defendants and Respondents.

R. L. Thurmond for Plaintiffs and Appellants.

Robert J. Farrell, Kenneth R. Henry, O'Melveny & Myers and Howard J. Deards for Defendants and Respondents.

TAMURA, J. — The Crestline-Lake Arrowhead Water Agency is a public entity created by a special act of the Legislature (hereinafter referred to as the "Act")[1] and activated by a vote of the qualified electors. At a bond election held on June 15, 1965, the voters authorized the agency to issue general obligation bonds totalling seven and one-half

[1]Stat. 1962, First Ex. Sess., ch. 40, p. 278; West's Cal. Wat. Code App., 1959 Supp., 1966 Pocket Part, § 104-1 et seq. Deering's Wat. Code, Act 9099a, Uncodified Acts (Part Two).

million dollars. Petitioners, who are residents, property owners, and qualified voters within the agency, sought a writ of mandate in the superior court challenging both the procedural validity of the bond election, as well as the substantive power of the agency to incur a bonded indebtedness in an amount which they allege would require revenues in excess of that which could be raised by the maximum tax rate of $1.00 per $100 assessed valuation in order to service the bonds. A general demurrer to the amended petition was sustained without leave to amend, and judgment was entered dismissing the petition. Petitioners appeal from the judgment.

The Act provides for a maximum tax rate of $1.00 per $100 assessed valuation subject to an increase by a vote of the electors.[2] Originally no provision was made for a standby water charge, but in 1965 the Legislature added section 11.5 to the Act authorizing the agency to fix such a charge, not exceeding $5 per acre per year, "in any area within the agency boundaries to which water is made available by the agency, whether the water is actually used or not."[3]

On this appeal petitioners have abandoned their procedural attack upon the bond election. The only issue sought to be raised is whether the power of the agency to incur a bonded indebtedness is limited by the maximum tax rate.

But it is doubtful that the petitioners have alleged sufficient facts to raise that issue. They alleged that the repayment of the bonds "will impose a total tax burden in excess of the tax rate limit of $1.00 per $100.00 . . . in that repayment of the bond debt will require a tax rate which, when taken together with the additional standby water charge assessment, will exceed $1.00 per $100.00." The assumption that these allegations raise the issue whether the tax rate constitutes a limitation on the power to incur an indebtedness presupposes (1) that the standby charge is a tax and, (2) if it is a tax, that the Legislature was not empowered to increase the maximum tax rate. Neither presupposition is well founded.

██  The standby water charge is not a tax. It is a special assessment to be levied upon land according to the availability of water. A levy on all property, both real and personal, without regard to special benefits, is a tax; but a levy made only upon land on the basis of benefits received is a special assess-

[2] Act, § 29.
[3] Stat. 1965, ch. 614, § 1, p. 1949, approved June 10, 1965, filed June 11, 1965.

ment and not a tax. (*Cedars of Lebanon Hospital* v. *County of Los Angeles,* 35 Cal.2d 729, 747-748 [221 P.2d 31, 15 A.L.R. 2d 1045]; *Northwestern etc. Co.* v. *State Board of Equalization,* 73 Cal.App.2d 548, 553 [166 P.2d 917].) Nor is the classification affected by the method provided for the collection of the assessment. (*Cedars of Lebanon Hospital* v. *County of Los Angeles, supra,* p. 748.) Thus, the fact that section 11.5 of the Act provides that unpaid standby charges ''shall be added to and become a part of the annual tax levied upon the land'' and ''shall constitute a lien on that land, and shall be added to and become a part of the first installment of the tax'' does not make the standby charge a tax.

Assuming, *arguendo,* that the standby charge is a ''tax,'' the Legislature was empowered to amend the Act to authorize the agency to impose such levies. In the absence of constitutional restrictions, the Legislature has plenary power over the organization, boundaries, powers and liabilities of a special district. (*In re Madera Irr. Dist.,* 92 Cal. 296 [28 P. 272, 675, 27 Am.St.Rep. 106, 14 L.R.A. 755]; *Petition of East Fruitvale Sanitary Dist.,* 158 Cal. 453, 457 [111 P. 368]; *Galt County Water Dist.* v. *Evans,* 10 Cal.App.2d 116, 118 [51 P.2d 202].) Where vested rights are not impaired, the Legislature may enlarge, restrict, modify or abrogate the powers granted to such districts. (*Mulcahy* v. *Baldwin,* 216 Cal. 517, 518 [15 P.2d 738].) Thus, although the rights of bondholders may not be impaired after the issuance of bonds, the Legislature is not precluded from increasing the security, even after bonds are issued, by changing the method of raising revenue. (*La Mesa etc. Irr. Dist.* v. *Halley,* 197 Cal. 50, 60 [239 P. 719]; *Palos Verde Irr. Dist.* v. *Seeley,* 198 Cal. 477, 488-489 [245 P. 1092]. See *Wisconsin & Mich. Ry. Co.* v. *Powers,* 191 U.S. 379 [48 L.Ed. 229, 24 S.Ct. 107].) Nor is the original purpose for which a district has been organized altered or affected by a subsequent change in the method by which revenue is to be provided to accomplish its purposes. (*Orange County Water Dist.* v. *Farnsworth,* 138 Cal.App.2d 518 [292 P.2d 927].) There is no constitutional right to have a district tax rate remain unchanged. (See *Sunset Nut Shelling Co.* v. *Johnson,* 49 Cal.App.2d 354, 355 [121 P.2d 849].)

The Legislature being thus empowered to amend the Act to authorize the imposition of the standby water charge whether it be deemed an assessment or a ''tax'' and there being no restrictions against the availability of revenue from either or

both sources to service the bonds, the allegations of the amended petition, as presently framed, do not reach the basic issue which petitioners assume to be raised.

■ Assuming, however, that the complaint can be construed to allege that the bonds could not be repaid out of the combined revenue from the standby charge and the $1.00 tax rate, we shall consider the basic issue argued by petitioners—whether the tax rate constitutes a limitation on the agency's power to incur a bonded indebtedness.

The agency is not subject to constitutional limitations on indebtedness. The provisions of article XI, section 18 of the Constitution[4] against incurring indebtedness in any year in excess of the revenues provided for that year except in the mode provided apply only to counties, cities and school districts. (*In re Madera Irr. Dist.*, *supra*, 92 Cal. 296, 342-344; *Bliss* v. *Hamilton*, 171 Cal. 123, 124 [152 P. 303]; *Strain* v. *East Bay Municipal Utility Dist.*, 21 Cal.App.2d 281, 284 [69 P.2d 191]; *General Engineering etc. Co.* v. *East Bay Municipal Utility Dist.*, 126 Cal.App. 349, 356 [14 P.2d 828].)

In addition to the constitutional limitation, the Legislature has in some instances expressly imposed limitations on the amount of bonded indebtedness a public entity may incur measured by such yardsticks as the total tax revenue in a previous year, percentage of assessed value of taxable property, or the percentage of the assessed value of all property.[5] (*Pacific Gas & Elec. Co.* v. *Shasta Dam etc. Dist.*, 135 Cal. App.2d 463 [287 P.2d 841].) Where a limitation on indebtedness is statutory, however, it may be changed or entirely omit-

---

[4]Const., art XI, § 18: ''No county, city, town, township, board of education, or school district, shall incur any indebtedness or liability in any manner or for any purpose exceeding in any year the income and revenue provided for such year, without the assent of two-thirds of the qualified electors thereof, voting at an election to be held for that purpose, nor unless before or at the time of incurring such indebtedness provision shall be made for the collection of an annual tax sufficient to pay the interest on such indebtedness as it falls due, and also provision to constitute a sinking fund for the payment of the principal thereof, on or before maturity, which shall not exceed 40 years from the time of contracting the same; . . .''

[5]*Cities,* Gov. Code, § 43605; *Counties,* Gov. Code § 29909; *School Districts,* Ed. Code, §§ 21702-21707; *Highway Districts,* Sts. & Hy. Code, § 25376; *Bridge-Highway Districts,* Sts. & Hy. Code, § 27220; *Recreation and Park Districts,* Pub. Resources Code, § 5784.22; *Sanitary Districts,* Health & Saf. Code, § 6651; *Municipal Utility Districts,* Pub. Util. Code, §§ 12841, 12842; *Water Conservation Districts,* Wat. Code, §§ 74770, 74771, 74950; *Public Utility Districts,* Pub. Util. Code, § 16573; *Library Districts,* Ed. Code, § 27956.

ted at the will of the Legislature. (*General Engineering etc. Co.* v. *East Bay Municipal Utility Dist., supra,* 126 Cal.App. 349, 356-357; see *In re Madera Irr. Dist., supra,* 92 Cal. 296, 342.)

Significantly, we find no express legislative limitation on the agency's power to incur an indebtedness, bonded or otherwise.

It is apparent from the foregoing that there is no legal limitation on the amount of bonded indebtedness the agency may incur. Petitioners cite no cases from this state, and our research fails to disclose any, holding that in the circumstances here presented, the tax rate constitutes an implied limitation on indebtedness.

Petitioners rely upon *City of Portsmouth* v. *Kountz,* 129 Ohio St. 272 [194 N.E. 869, 97 A.L.R. 1099], and the annotation at 97 A.L.R. 1103 reviewing a collection of cases from other states in which the question has been considered. The *Portsmouth* case is clearly distinguishable. The court referred to the existence of a constitutional provision that no bonded indebtedness shall be incurred unless provision is made ''for levying and collecting annually by taxation an amount sufficient to pay the interest on such bonds and to provide a sinking fund for the final redemption at maturity,'' and reasoned, ''Such provision, however, cannot legally be made if the proposed taxation, when added to the taxation already existing, exceeds 1 per cent. of the valuation of the taxable property.'' Most of the cases cited in the annotation reaching the same result as *Portsmouth* similarly involved instances in which the entities were subject to both a constitutional or statutory debt limitation and a maximum tax rate. As the annotation points out, in some states under like restrictions, contrary results have been reached, the courts holding that the limitation on indebtedness and the maximum tax rate are separate and distinct and that one should not be construed as circumscribing the other. (*Coles County* v. *Goehring,* 209 Ill. 142 [70 N.E. 610]; *Winchester* v. *Nelson,* 175 Ky. 63 [193 S.W. 1040]; *Emerson* v. *Blairsville,* 2 Pittsb. (Pa.) 39.) The most that can be derived from the cases contained in the annotation is the existence of a conflict of authorities in other jurisdictions as to whether a tax rate constitutes an implied limitation on the power to incur indebtedness. The conflict stems primarily from variations in the constitutional or statutory provisions involved.

A case which is more directly in point is *City of Ft. Madison* v. *Fort Madison Water Co.*, 114 F. 292 [52 C.C.A. 204], An Iowa statute authorized cities to contract for water service and to levy a special tax therefor provided the tax in any one year did not exceed five mills. In response to a suit by a water company to collect hydrant rentals, the city contended the tax revenue was insufficient to pay the obligation and that it was not empowered to pay the deficit from any other funds. In rejecting the contention that the tax rate was a limitation upon the city's power to contract the indebtedness, the court stated, "Under the statutes quoted there is no limitation on the amount of indebtedness a city may contract to procure water for its corporate purposes. It is authorized 'to pay therefor such sum or sums as may be agreed upon.' The 'special tax' authorized to be levied to pay the water rents is limited to five mills, but this is not a restriction on the power of the city to contract debts for that purpose. The power of the city to levy the special tax to pay for water is not the measure of its power to contract debts for water. There is no necessary connection between the power to contract debts and the power to levy taxes to pay them." The case was followed in *Slocum* v. *City of North Platte*, 192 F. 252, 263 [112 C.C.A. 510], where the court held that the city's power to contract for the purchase of property existed independently of its power to levy a tax in an amount sufficient to pay for it.

In *Hubbard* v. *Board of Comrs. of Bannock County*, 68 Idaho 141 [190 P.2d 685], the court held that a statute authorizing the county commissioners to maintain a hospital and to levy a tax not exceeding "1½ mills on the dollar on all taxable property in the county" did not constitute a limitation on the county's power to incur a bonded indebtedness for hospital construction. The court upheld the validity of a one million dollar bond issue against the contention that the maximum tax rate authorized did not provide sufficient funds to pay interest and provide a sinking fund for bond retirement. The court based its decision on (1) the absence of any statutory constitutional limitation upon the amount of bonds the county could vote for hospital purposes and (2) the fact that taxation was not the exclusive method provided for repayment of the bonds.

In the instant case, in addition to revenues from taxation and standby charges, the Legislature has authorized the agency to fix water rates in such amounts as will provide for

operating expenses, improvement and extensions, interest on bonded indebtedness and provide a sinking fund for repayment of the bonds on maturity.[6] This is a clear indication that the tax rate was not intended as a limitation on the amount of bonded indebtedness which the agency could incur. (*Hubbard* v. *Board of Comrs. of Bannock County, supra,* 68 Idaho 141 [190 P.2d 685].)

We conclude that the maximum tax rate is not a limitation on the agency's power to incur a bonded indebtedness.

Although the foregoing disposes of the issues raised by petitioners, it should be noted that the amended petition does not allege that the agency proposes to issue all of the bonds at one time. It is not uncommon for special districts subject to a limitation on bonded indebtedness to vote bonds in an amount which would exceed the limitation if all bonds voted were issued at one time. The excess authorization, however, does not invalidate the issuance of the bonds in series, as required, in amounts not exceeding the bonded debt limit. Authorization in excess of a debt limit does not invalidate the bonds. (*Clark* v. *Los Angeles,* 160 Cal. 30, 44-45 [116 P. 722].) An obligation or debt is contracted only when the bonds are sold and delivered. (*Metropolitan Water Dist.* v. *Marquardt,* 59 Cal.2d 159, 176 [28 Cal.Rptr. 724, 379 P.2d 28].)

Nor would the fact, if it be a fact that a sufficient amount of bonds could not be issued to carry out the entire project invalidate the bonds. Improvements may be carried out to the extent of the funds available. (*Metropolitan Water Dist.* v. *Marquardt, supra,* 59 Cal.2d 159, 176; *Sacramento Municipal Utility Dist.* v. *Spink,* 145 Cal.App.2d 568, 576-580 [303 P.2d 46].)

Finally, there is little danger that the agency would, as a practical matter, be able to incur a bonded indebtedness that could not be repaid from available revenues. Financial institutions who purchase municipal bonds are sophisticated purchasers who carefully review the ability of the public corporation to repay their bond obligations.

The judgment is affirmed.

McCabe, P. J., concurred.

---

[6] Act, § 27.