Zimmerman, J.
 

 The demurrer to the answer requires a determination of three principal questions. First, Does paragraph 7 of Section 1 of Amended Substitute Senate Bill No. 38, commonly called the Annat Law, and hereinafter referred to as such, create an effective exception to Section 2293-12, General Code of Ohio? Second, Is the Annat Law unconstitutional in permitting the taxing authorities of political subdivisions in Ohio to fix the maturity of the earliest installment of a proposed bond issue at five years after the earliest possible date of maturity? Third, Is Ordinance No.' 314-33, as amended by Ordinance No. 328-33, of the city of Columbus, passed in pursuance of the Annat Law unconstitutional because it definitely fixes the maturity of the earliest installment of its proposed bond issue for the construction of a sewage disposal plant and its appurtenances at five years after the earliest possible date of maturity?
 

 We shall approach the subject with an historical preface. It may be judicially noted that during the fall of 1929 the United States began to sink into an economic depression, which reached distressing and momentous proportions, involving widespread unemployment among the people, a general disorganization of industry, and a prostration of agriculture, seriously
 
 *489
 
 affecting the public welfare. In an attempt to alleviate, in part, this continuing condition, the Congress of the United States, in June, 1933, passed legislation known as the National Industrial Recovery Act (48 Stats, at L., 195), in which was appropriated a large sum of money for the purposes of the act.
 

 To encourage a general and comprehensive program of public works throughout the nation, Title II of the Act (Title 40, Section 401
 
 et seq.,
 
 U. S. Code) empowers the President, through an administrator or such other agencies as he may designate or create, to make money grants to states, municipalities or other public bodies for such projects as may be approved, in an amount not in excess of thirty per centum of the cost of the labor and materials employed upon the particular project.
 

 That prompt advantage might be taken of this liberal offer of the federal government, many states, municipalities and other public bodies would find it necessary to issue and sell bonds to finance their proportionate share of the work to be done.
 

 In Ohio the issuing of bonds by political subdivisions of the state is governed by the so-called Uniform Bond Act, comprising Sections 2293-1 to 2293-37, inclusive, General Code. Certain provisions of this act made a present bond issue by many municipalities and! other public subdivisions impossible, and to remedy this situation and make it possible to submit proposed bond issues to a vote of the electorate at the election in November, 1933, the General Assembly, in September of 1933, enacted the Annat Law as an emergency measure, the intent and purpose of which is as expressed in Section 1 thereof, as follows:
 

 “For the purpose of enabling municipal corporations and other subdivisions of Ohio to participate in federal aid provided by the ‘national industrial recovery act’ enacted by the seventy-third congress of the United States, and for that purpose only, the tax
 
 *490
 
 ing authority of any municipal corporation or any other subdivision provided for in said act is hereby authorized to issue bonds, during the effective period of said act, subject to the provisions of Sections 2293-1 to 2293-37, inclusive, of the G-eneral Code, except as hereinafter provided, and may be non-interest bearing for any number of consecutive years, beginning with the date of issue.”
 

 It is impracticable to set out here the Uniform Bond Act for comparison with the Annat Law. For the purpose of this opinion a synopsis of Section 1 of the Annat Law, as taken from relator’s brief, should suffice to suggest some of its material departures from the Uniform Bond Act. Such synopsis is as follows:
 

 “Paragraph 1 provides that if the Tax Commission of Ohio certifies that the municipal corporation or other subdivision of Ohio is unable to issue such bonds subject to the limitations prescribed by the Uniform Bond Act, then such political subdivision may issue bonds under this act in an amount not exceeding the amount by which the net indebtedness of such political subdivision may be reduced by the thirty-first day of December, 1938,” etc.
 

 “Paragraph 2 provides that such bonds shall not be subject to certain limitations of the Uniform Bond Act.
 

 “Paragraph 3, that the question of issuing such bonds shall require only the affirmative vote of a majority of those voting upon the proposition.
 

 “Paragraph 4, that if such bonds are purchased by the United States it shall not be necessary to advertise or offer the same for sale at a competitive bidding.
 

 “Paragraph.5 provides that such bonds may not be issued until the proposed projects have been approved by the proper federal authorities and a contract entered into between the proper authorities of the subdivision and the proper federal authorities pursuant to the said National Industrial Recovery Act.
 

 
 *491
 
 “Paragraph 6 provides how such proposed bond issue may be submitted at a primary or special election called for that purpose.
 

 “Paragraph 7 changes the time when the resolution declaring the necessity for such bond issue, and setting forth additional facts as provided in Section 2293-19, shall be certified to the county auditor at least thirty days prior to the election; the auditor’s certificate to the taxing authority shall be submitted not more than twenty-five days prior to such election and that such resolution shall be certified to the election authorities not more than twenty days prior to such election, and further provides: ‘Such resolution may fix the maturity of the earliest installment not later than five years after the earliest possible date of maturity despite the prohibition contained in Section 2293-12 of the General Code of Ohio.’
 

 “Paragraph 8 provides that such election shall be held as provided by the Uniform Bond Act, except that the publication of notice of such election shall be sufficient if made four times in one or more newspapers of general circulation in the subdivision.”
 

 The difference between paragraph 7 of Section 1 of the Annat Law and Section 2293-12, General Code, constitutes the most radical and material variance between the Annat Law and the Uniform Bond Act. Section 2293-12, General Code, reads:
 

 “All bonds hereafter issued by any subdivision, or other political taxing unit, except bonds issued under the authority of article XVIII, section 10, of the constitution of Ohio, and except bonds as provided in section 2295-15 of the General Code, shall be serial bonds maturing in substantially equal semi-annual or annual installments. If issued with semi-annual maturities the first installment shall mature not earlier than the first day of March next following the 15th day of July next following the passage of the ordinance or resolution authorizing the issue of such bonds
 
 *492
 
 as provided in section 2293-26 of the General Code; and if issued with annual maturities, the first installment shall mature not earlier than the first day of the second September next following said 15th day of July. In either case the first installment shall mature not later than eleven months after said earliest possible date of maturity.”
 

 As noted, paragraph 7 of Section 1 of the Annat Law provides that ‘ ‘ the resolution declaring the necessity for such bond issue *
 
 *
 
 * may fix the maturity of the earliest installment not later than five years after the earliest possible date of maturity
 
 despite the prohibition contained in section 2293-12 of the General Code of Ohio/7
 

 We cannot agree with the argument of .the respondents that the language of paragraph 7 just quoted is insufficient to constitute an exception to Section 2293.-12, General Code. Acts of the General Assembly are of equal dignity, and the latest expression on the same subject, when irreconcilable with previous expressions, is controlling. The clear legislative intent in the last sentence of paragraph 7 of Section 1 of the Annat Law is to create an express exception to Section 2293-12, and must be given the intended effect.
 
 Cochrel, a Minor,
 
 v.
 
 Robinson,
 
 113 Ohio St., 526, 149 N. E., 871; 25 Ruling Case Law, 960.
 

 The most serious attack made on the Annat Law and the ordinance of the city of Columbus under consideration is that they are in conflict with Section 11 of Article
 
 XII
 
 of the Constitution of Ohio, adopted in 1912, which says:
 

 “No bonded indebtedness of the state, or any political subdivisions thereof, shall be incurred or renewed, unless, in the legislation under which such indebtedness is incurred or renewed, provision is made for levying and collecting annually by taxation an amount sufficient to pay the interest on said bonds, and to
 
 *493
 
 provide a- sinking fund for their final redemption at maturity.”
 

 The conclusion is inescapable that this section requires an
 
 arnmal
 
 levy and collection of taxes in a sufficient amount to pay the interest on public bonds, and to provide for their'final redemption. However, the relator and the respondents are at hopeless odds on their interpretation of the section in other respects. Relator strongly maintains, that this section is satisfied if provision is made for levying and collecting annually an amount sufficient to pay interest on the bonds, and to provide a fund to pay the principal at such maturity dates as may be designated within the authorized life of the bond issue. Consequently, the constitutional provision is not violated by permitting or fixing the maturity of the earliest installment of bonds at five years after the earliest possible date of maturity, so long as an annual tax levy and collection are made to pay the principal when due. The levying and collection of the tax need not be of an equal or substantially equal amount, because the Constitution does not say so. On the other hand, the respondents are equally sure that this section of the Constitution can only mean that such bonded “indebtedness shall be distributed equally during the years covering the life of the improvement or the period of indebtedness,” as contemplated and provided by Section 2293-12, General Code. In other words, the annual tax levy and collection must be of a uniform or substantially uniform amount during the period over which the bond issue extends.
 

 Under ordinary conditions and in so-called normal times a financial policy in line with the contention of the respondents would be a better and more approved practice, but the question with which we are confronted is, Does the constitutional provision under consideration imperatively demand such a construction or interpretation? We are of the opinion that it does not.
 

 
 *494
 
 In taking this position we have perhaps adopted a liberal, bnt certainly not a radical, view, and we are confident our conclusion is supported by both reason and authority.
 

 Constitutions are not lifeless or static instruments, whose interpretation is confined to the conditions and outlook which prevailed at the time of their adoption. Nor are they circumscribed by legislation previously adopted under them. They should be given a flexible interpretation such as will meet new conditions and circumstances as they arise, and which necessity may demand without doing violence to plain language employed or transgressing the clear bounds of reason. 8 Ohio Jurisprudence, 128
 
 et seq.;
 
 6 Ruling Case Law, 46
 
 et seq.
 
 An example of this is found in the Uniform Bond Act itself, with which respondents appear to be satisfied.
 

 When Section 11, Article XII, of- the Constitution was adopted in 1912, sinking fund bonds were the only type of bonds- known. Serial bonds came as a later and more approved development, and they are the.kind prescribed by the Uniform Bond Act.
 

 It is- true that a Constitution is- not a grant, but a limitation of power to legislative bodies, and no emergency constitutes an excuse for the adoption of legislation which the Constitution clearly prohibits. But an emergency may furnish the occasion for the exercise of- power contained within the Constitution, not theretofore deemed necessary to invoke. This principle is ably expounded by Chief Justice Hughes in the recent case of
 
 Home Building & Loan Assn.
 
 v.
 
 Blaisdell,
 
 290 U. S., —, 54 S. Ct., 231, 78 L. Ed., —, upholding the constitutional validity of the Minnesota Mortgage Moratorium Law (Laws of Minnesota, 1933, chapter 339). The instant case, in our opinion, presents a situation for an appropriate application of the above rules.
 

 The further contention is made that the Annat Law
 
 *495
 
 is unconstitutional because its terms would permit a political subdivision issuing bonds to postpone tbe levying and collection of taxes tbereon for a period of five years.
 

 If the law directed such'procedure it would clearly be unconstitutional, because au annual levy and collection of. taxes is imperative; but it does not. It is a permissive or enabling statute, requiring affirmative action in tbe issuance of bonds by tbe political subdivisions for whose benefit it was passed. One of tbe cardinal rules of construction is that a strong presumption exists in favor of tbe validity of legislative acts, and that a construction will be given them, when possible, to sustain their constitutionality. It is therefore not to be assumed that the Annat Law contemplates or invites any procedure on tbe part of political subdivisions which would eliminate an annual levy and collection of taxes to pay tbe interest on a bond issue and provide for its retirement at maturity. Tbe authorities go so far as to bold that if a statute is susceptible of two constructions, one of which would render it unconstitutional and tbe other constitutional, it is tbe duty of tbe courts to adopt tbe latter construction and restrict its operation within constitutional limits. 8 Ohio Jurisprudence, 160; 25 Ruling Case Law, 1000.
 

 We now come to a consideration of tbe ordinance of tbe city of Columbus, passed in pursuance of tbe Annat Law.
 

 No objection is made to tbe preliminary procedure leading up to its adoption, nor is it maintained that sucb procedure is not in conformity with tbe Annat Law. Tbe point made is that tbe ordinance is unconstitutional because it exercises tbe permission granted by tbe Annat Law in providing for a bond issue tbe first installment of which falls due five years after tbe earliest possible date of maturity.
 

 As previously stated, tbe ordinance, as amended,
 
 *496
 
 creates a bond issue in tbe total amount of $2,720,000, for the construction of a sewage disposal plant, with its appurtenances. It is stipulated that the bonds shall be dated not later than December 15, 1933, ánd that the first installment of $136,000 shall mature and be payable February 1, 1940; the remaining installments of $136,000 each maturing and becoming payable on February 1st of each succeeding year, beginning in 1941 and ending in 1959. The issue bears interest at the rate of four per cent, per annum, payable semiannually, and is limited to a period of twenty-five years as prescribed by Section 2293-9, General Code, under Class C. The bonds are of the denomination of $1,000 each.
 

 That part of the ordinance providing for an annual tax levy to pay the interest and principal of such bonds is as follows:
 

 “For the purpose of providing necessary funds to pay the interest on the foregoing bonds promptly when and as the same fall due, and also to provide a fund sufficient to discharge the said serial bonds at maturity, there shall be and there is hereby levied on all taxable property in the City of Columbus, in addition to all other taxes a direct tax annually in an amount sufficient to provide funds to pay the interest on said bonds as and when the same shall fall due and also to provide a fund for the discharge of the principal of said serial bonds at maturity, 'which tax shall not be less than the interest and sinking fund tax required by Section 11 of Article XII of the Constitution. Said tax shall be levied outside of the 15 mill limitation.”
 

 From what has been said it follows that we are of the opinion that the Annat Law and the ordinance of the city of Columbus, Ohio, as amended, are both constitutional, and we so hold. Neither do we find them to contain such material imperfections as to warrant us in holding them invalid on any other ground.
 

 It may be claimed that the interpretation given Sec-
 
 *497
 
 ti on 11, Article XII, of the Constitution, makes for abuses on the part of tax levying authorities, by allowing them to impose an unequal amount of taxes throughout the different years covering the life of a particular bond' issue.
 

 Surely something should be left to the discretion and good judgment of such authorities. It is to be presumed that they will not exercise their powers harmfully within the possible limits of the Constitution. Besides, courts are not generally concerned with the policy or wisdom of legislative enactments, ordinances and the like, so long as they remain within constitutional bounds. 8 Ohio Jurisprudence, 291
 
 et seq.; Home Building & Loan Assn.
 
 v.
 
 Blaidsdell, supra;
 
 25 Ruling Case Law, 1017.
 

 Other objections are raised by the respondents, which we consider of minor import. It is contended that the Annat Law is unconstitutional because it permits the issuance of noninterest bearing bonds. Certainly the Constitution requires no annual levy and collection of taxes for interest when no interest is payable, and the question of noninterest bearing bonds is not involved in this case. Neither are we impressed with the contention that the Annat Law is in conflict with Section 2 of Article XII of the Constitution of Ohio. The Uniform Bond Act, as modified by the Annat Law, controls the issuing of bonds and the procedure leading up thereto by the various political subdivisions of the state, and we fail to see how other provisions of the General Code cited, relating to taxation, have application.
 

 Insistence is also made that at the election in November, 1933, various bond issues were voted by the electorate of the city of Columbus in excess of the amount by which the net indebtedness of the city will be reduced by December 31, 1938, as certified by the tax commission of Ohio under paragraph 1, Section 1, of the Annat Law, and that consequently the bond
 
 *498
 
 issue involved in the instant case may be in excess of the authorized limit.
 

 Such a situation does not appear from the pleadings, and we may not assume that it. exists. In the event of its occurrence, the proper parties, who feel themselves aggrieved, can no doubt bring an appropriate action in a court of competent jurisdiction for an adjudication of their claims.
 

 The only case in which this- court has interpreted Section 11 of Article XII of the Constitution to any extent is that of
 
 Link
 
 v.
 
 Karb, Mayor,
 
 89 Ohio St., 326, 104 N. E., 632, and we find nothing there in conflict with óur present holding.
 

 The demurrer to the answer is sustained.
 

 Demurrer to answer sustained.
 

 Weygandt, C. J., Allen, Stephenson, Jones, Matthias and Bevis, JJ., concur.