Matthias, J.
 

 Since the issue in this case is made by demurrer filed by the defendants, it must be assumed for the purpose thereof that all the facts well pleaded in the petition are admitted to be true. The petition, which is very voluminous, sets forth the various acts of council, its resolutions and .its contracts with the United States Government; but the gravamen of the plaintiff’s complaint lies in the following paragraph of the petition as twice amended:
 

 ‘ ‘ On J une 15,1934, said city commenced the issuance in installments of bonds issuable under said bond pro
 
 *187
 
 gram within said limitations. By October 3,1934, said city, by the issuance of said installments, had exhausted its powers for the creation of indebtedness within said limitations.. The bonds issuable in the exhaustion of said powers for the creation of indebtedness within said limitations did not exceed the principal amount of $1,583,500, which amount, plus said $6,895,950, principal amount of bonds issuable outside of said limitations, and totaling $8,479,450, constituted the aggregate total principal amount of bonds issuable by said city under said Annat Act, although Annat Act bonds in the amount of $8,499,200, none of which are municipal light plant bonds, were issued by said city on or before July 6, 1936, and are now outstanding. Since said July 6, 1936, the said city, its officers and agents, have been without any right, power or authority to issue any Annat Act bonds under or by virtue of any of the elections and/or of the ordinances and resolutions described in detail in the petition and particularly without any right, power or authority to issue any part of the said municipal light plant bonds.”
 

 The plaintiff also has set forth in detailed schedule the amount of bonds which the city was authorized to issue under the law in effect at the time of the election. It is upon these asserted facts that plaintiff seeks to enjoin the issuance of the bonds in question.
 

 The position taken by the defendants, as found in their arguments and briefs, may be thus stated: Even though the city has exceeded the limitations as claimed by the plaintiff in his petition as twice amended, nevertheless the city is authorized now to issue these municipal light plant bonds by virtue of certain other provisions of the, law which expressly authorize the issuance of these bonds regardless of the debt limitations which were in force at the time of the election.
 

 The election in this case was held under authority of the provisions of Amended Substitute Senate Bill No. 38 (115 Ohio Laws [Pt. 2], 80). This bill was
 
 *188
 
 before this court in the case of
 
 State, ex rel. City of Columbus,
 
 v.
 
 Ketterer,
 
 127 Ohio St., 483, 189 N. E., 252, and was at that time held not to be violative of the provisions of the Constitution of the state of Ohio. This act provided generally that municipal corporations and other subdivisions of the state of Ohio, for the purpose of participating in federal aid provided by the National Industrial Recovery Act, were authorized to issue bonds during the effective period of the National Industrial Recovery Act, subject, however, to the provisions of Sections 2293-1 to 2293-37, General Code, and also subject to the following provisions and limitations :
 

 “1. If the Tax Commission of Ohio certifies that the municipal corporation or other subdivision of Ohio is unable to issue such bonds subject to the limitations prescribed by Sections 2293-14, 2293-15, 2293-16, 2293-17, and 2293-18 of the General Code whether or not such bonds shall have been or may be voted, then such bonds may be issued to the extent required without the authority of an election and outside of the limitations prescribed by said sections of the General Code after exhausting the powers for the creation of indebtedness within such limitations; provided, however, that the aggregate amount of such bonds issued under this act in excess of such limitations shall not exceed the amount by which the net indebtedness of the municipality or subdivision within such debt limitations, as it exists on the effective date of this act, will have been reduced by the 31st day of December, 1938. Such reduction in net indebtedness shall be determined by the aggregate principal amount of bonds maturing within said period. The certificate of the Tax Commission of Ohio shall also state the amount of such reduction and said certificate as to the matters required by this act shall be final. Nothing herein shall prevent the application to such bonds of the provisions of subsection
 
 d
 
 of Section 2293-14 of the General Code to
 
 *189
 
 the extent that the income from the improvement for which the bonds are issued is sufficient to cover the cost of all operating expenses and debt charges on said bonds or part thereof.
 

 “2.
 
 Such bonds shall not be subject to the limitations of Sections 2293-14, 2293-15, 2293-16 and 2293-17 of the General Code.
 

 “3. If the question of issuing any such bonds is submitted to the electors of any subdivision, such bond issue shall require only the affirmative vote of a majority of those voting upon the proposition.
 

 “4. If such bonds are purchased by the United States or any instrumentality thereof it shall not be necessary to advertise or offer the same for sale at competitive bidding.”
 

 At the time of such election, the following statute was also in full force and effect:
 

 “See. 2293-14. The net indebtedness created or incurred by a municipal corporation without a vote of the electors, shall never exceed one per cent of the total value of all property in such municipal corporation as listed and assessed for taxation.
 

 “The net indebtedness created or incurred by a municipal corporation shall never exceed five per cent of the total value of all property in such municipal corporation as listed and assessed for taxation. * * *”
 

 The following section of the General Code was also then in fidl force and effect:
 

 “See. 2293-23A If, before bonds authorized by election under terms of Section 2293-23 or notes in anticipation of such bonds are issued, the bonded indebtedness of the subdivision shall exceed that allowed by law then none of said bonds or notes shall be issued and the authority to issue same by virtue of said election shall become void. No bonds authorized by vote of the people as prescribed in Section 2293-23 or notes in anticipation thereof shall be issued after the first day of the fourth January following the election on
 
 *190
 
 such proposition, but this period of limitation shall not be deemed to run for any time during which the project for which such bonds have been authorized, or any part thereof is involved in litigation or the issuing or validity of such bonds or-notes issued, or to be issued in anticipation thereof, or a part thereof is involved in litigation, either before a court or a legally constituted commission or other tribunal or board.
 

 “Bonds or notes in anticipation thereof which are issued within the debt limitation of a subdivision for a portion of the amount authorized by such election shall be valid and in no manner affected by the fact that the balance of said bonds or notes in anticipaton thereof cannot be issued by reason of such bonded indebtedness or such lapse of time. Bonds authorized by vote prior to January 1, 1931, or notes in anticipation thereof, may be issued at any time prior to January 1, 1936, if the bonded indebtedness of the subdivision is less than the limit and the issue of such bonds or notes would not increase such indebtedness to more than such limit.
 

 “Nothing in this act shall be construed to prevent the issuance of bonds to redeem notes lawfully issued in anticipation of the issuance of such bonds.
 

 “Provided that the terms of this act shall not apply to any bonds authorized if ten per centum of the sum authorized for the project for which such bonds have been voted has been expended, or if ten per centum of the bonds authorized, or a like amount of the interim or anticipatory notes issued in lieu thereof have been issued and sold, or if contracts for such expenditure for the project or if contracts for the issuance or sale of such percentage of the bonds or notes have been made. The certificate of the fiscal officer of the bond-issuing authority shall be conclusive proof of the proportionate amount of expenditure actually made or contracted for or of the proportion of such bonds or
 
 *191
 
 notes actually issued and sold or contracted to be issued and sold.” (115 Ohio Laws, 442.)
 

 The gist of the complaint of the plaintiff is that the debt limitation as determined by the provisions of the so-called Annat Act were, as set forth in their petition, $8,479,450; and that since the city of Columbus, at the time of the filing of the petition, had issued $8,499,200 in bonds, none of which were the municipal light plant bonds in question in this case, the city has exceeded the limit provided by statute and, under the provisions of the first paragraph of Section 2293-23b, General Code, these municipal light plant bonds cannot be issued, for it is there provided that “the authority to issue same by virtue of said election shall become void.”
 

 The position taken by the defendants in this case is that, even if that were true and the allegations of the plaintiff were substantiated by evidence, nevertheless the bonds in question could be issued by virtue of certain laws subsequently enacted by the General Assembly. The defendants rely to a great extent upon Section 2293-14a, General Code, effective March 14, 1938. This section is as follows:
 

 “See. 2293-14a. Bonds authorized by vote prior to January 1, 1935, and hereafter issued for the purpose of constructing public improvements aided in any way by the United States of America or any agency or instrumentality thereof or for carrying forward any project incident to or necessary for the procuring of federal aid for such improvement, and bonds hereafter authorized by vote and issued for the purpose of reconstruction in whole or in part of bridges on existing highways, shall at the time of issuance be exempted from all debt limitations. After the issuance of bonds of the class described in this paragraph, such bonds shall, however, be considered in ascertaining the debt limitations prescribed by law. ’ ’
 

 The defendants also rely upon the amendment of
 
 *192
 
 Section 2293-23&, General Code (117 Ohio Laws, 44), effective March 16, 1937, which exempted from the limitations prescribed by such act bonds to be “issued for the purpose of participating in any federal aid or any public works program or any work relief program aided in any way by the United States of America or any agency or instrumentality thereof, or for carrying forward any project incident to or necessary for the procuring of federal aid for a public improvement.”
 

 These amended sections of the General Code, it is argued by the defendants, are applicable and have the effect of an express authorization of the issuance of the light plant bonds in question, and are valid and constitutional, since they apply only to bond's to be issued in the future and are not retroactive in operation and effect. The theory of the defendants is that “The Legislature by Section 2293-14® recognizes and adopts a past existing fact, to wit, * * * the November 1933 election approval. Upon this fact the General Assembly predicates authority to political subdivisions in clear and concise terms to issue future bonds.”
 

 Counsel for defendants further contend that:
 

 “To hold that a future General Assembly could not recognize and carry into effect such an existing fact regardless of any intervening legislative act on the subject, is not supported by reason or authority. One General Assembly can not bind the legislative hand of a future General Assembly in such a manner.”
 

 It is further contended that the law in effect at the time the
 
 bonds are issued
 
 controls and not the law in effect at the time the
 
 election is held.
 

 "When this matter was submitted to a vote of the people in November, 1933, that election was held pursuant to the provisions of Section 2, Article XII of the Constitution of Ohio. This section at that time provided in part as follows:
 

 “No property, taxed according to value, shall be so
 
 *193
 
 taxed in excess of one and one-half per cent of its true value in money for all state and local purposes, hut laws may he passed authorizing additional taxes to be levied outside of such limitation, either when approved by at least a majority of the electors of the taxing district voting on such proposition, or when provided for by the charter of a municipal corporation.”
 

 It follows that municipalities or subdivisions of the state have no authority to borrow money and levy taxes for the payment thereof in excess of the one and one-half per cent limitation without the approval of at least a majority of the electors thereof. In this case, money was being borrowed and taxes levied which necessarily would be beyond the one and one-half per cent limitation and such approval by the electors was therefore necessary. Such vote constitutes an essential grant of authority. It is the only means by which, under the conditions presented here, a municipality or subdivision of the state can acquire authority to borrow the money and levy the taxes to pay the debt. It is a grant of authority by the people under the laws in effect at the time of the election.
 

 Authority so granted must be strictly construed. If it were to be otherwise considered and the Legislature were to have the power to change the debt limitations after a vote with the result that the authorized bonds would exceed the statutory limitations in effect at the time of the election, it would then follow that the voters thereby authorize a program of improvements and consequent bonded indebtedness at their peril, for it would be subject to any future extension or increase in such indebtedness as the Legislature might see fit to provide, though entirely beyond that contemplated by the electors when the authority was conferred.
 

 By their vote the electors granted to the city council some discretion as to the authorized projects it would proceed to construct; but it did not direct them to carry out each and all of the approved projects. This is ad
 
 *194
 
 mitted, since the petition pleads that one of the projects has been abandoned by the city. If, as alleged in the petition, the total bond issues authorized did exceed the statutory limitations of the Annat Act, the voters were without power to give any right to the city to issue bonds in the aggregate in excess of the limitations. The Legislature had theretofore established these limits and they were binding on both the city and the voters.
 

 The Annat Act had provided the limit to which the city might borrow as a result of the election held in November, 1933. As it appears from the averments of the petition that these limits are exceeded, that the city has issued bonds in excess of the amount authorized by the statute in effect at the time of the election, and therefore that the balance of the bonds may not be issued, the authority conferred to issue them being void, the demurrer should have been overruled and issue permitted to be made by answer if desired.
 

 It is to be observed that Section 2293-14®, General Code, relied upon by the city to support its position, by its express terms applies to bonds which had been authorized by vote of the electors prior to its enactment, and its sole purpose is to change debt limitations subsequent to such election. This is clearly violative of Section 28 of Article II of the Constitution of Ohio in that it is designed to operate retroactively.
 
 Miller
 
 v. Hixson,
 
 Treas.,
 
 64 Ohio St., 39, 59 N. E., 749;
 
 City of Cincinnati
 
 v.
 
 Seasongood,
 
 46 Ohio St., 296, 21 N. E., 630.
 

 The amendment to Section 2293-23b, General Code, effective March 16, 1937, removes from the limitation theretofore prescribed bonds to be issued for the purpose of participating in any public works program sponsored by the Federal Government. This amendment is prospective in its form and terms. The application of its provisions sought by counsel for the de
 
 *195
 
 fendants would, however, be an unconstitutional application of its provisions.
 

 For the reasons stated, the judgment of the Court of Appeals is affirmed.
 

 Judgment affirmed.
 

 Weygandt, C. J., Day, Zimmerman, Williams and Hart, JJ., concur.