Zimmerman, J.
 

 This original action in mandamus is brought as a test case. The city of Cleveland appears as relator and G. A. Gesell, director of finance of that municipality, is the respondent. The controversy is submitted upon the petition, answer, reply and an agreed statement of facts. It involves the right of the city of Cleveland presently to issue bonds, authorized by an emergency ordinance, in the amount of $2,138,000, to meet its requirements for poor relief during the year 1940, under the terms of Section 2293-43, General Code.
 

 That section reflects the exigencies of the times and is plainly designed to enable the various subdivisions of the state to pay unsecured indebtedness and provide for poor relief by the issuance of bonds, subject to the approval of the Board of Tax Appeals, in a sum not exceeding 70 per cent of the net amount of delinquent taxes, inclusive of assessments on improvements on which the bonds have been paid, due the particular subdivision, which are unpledged to pay any bonds, scrip, notes or certificates. The bonds issued under this section are expressly exempted from statutory debt limitations, and the proper authority of the subdivision issuing the bonds must provide for the levying of a tax sufficient in amount to pay the principal and interest thereon.
 

 The petition herein prays for a writ of mandamus against the respondent, to compel him to perform the ministerial acts of certifying a copy of the bond ordinance to the auditor of Cuyahoga county and of offering the bonds to the sinking fund commission of the city of Cleveland for purchase.
 

 
 *257
 
 There can be little doubt that the relator has complied with the procedural requirements of Section 2293-43, General Code. On March 11, 1940, the Cleveland city council duly adopted a resolution instructing the director of law of that city to apply to the Board of Tax Appeals of the state of Ohio for permission to issue bonds in the aforementioned sum of $2,138,000, to finance poor relief in 1940.
 

 Pursuant to such resolution, the auditor of Cuyahoga county certified the total amount of delinquent taxes, etc., due and payable to the city of Cleveland at the last semi-annual tax settlement. The correct and agreed amounts are as follows: From real estate and public utility property, $8,178,895.77; from special assessments covering the improvements on which the bonds have been paid, with penalties, $1,103,730.61; from general personal and classified property (estimated) $1,764,900, making a total of $11,047,526.38. While, through an error, such total is less than the one originally certified by the county auditor, the agreed statement of facts discloses that all obligations incurred and authorized in contemplation of the collection of delinquent taxes, including the proposed bond issue of $2,138,000, is but $7,695,628, which sum is below 70 per cent of the agreed and correct total of $11,047,526.38.
 

 The relator rightly contends that penalties may be included in computing the amount of delinquent taxes and assessments as contemplated by Section 2293-43, General Code. This position is sustained by Sections 5678 and 5679, General Code, providing that penalties shall be added to unpaid taxes and assessments, and the whole regarded as delinquent taxes and assessments. What was said concerning penalties and interest in
 
 State, ex rel. Outcalt, Pros. Atty.,
 
 v.
 
 Guckenberger, Aud.,
 
 134 Ohio St., 457, 17 N. E. (2d), 743, is of no controlling significance here.
 

 Next, in conformity with the resolution of March
 
 *258
 
 11th, the respondent, as director of finance, prepared a statement showing the total bonded indebtedness of the city of Cleveland, the aggregate amount of outstanding accounts and notes due from the city and incurred prior to the commencement of the fiscal year of 1940, the aggregate requirements for poor relief in 1940, which the relator is unable to finance except by the issuance of bonds, and the city’s estimated revenue for the fiscal year.
 

 Then, in compliance with the resolution, the director of law, on behalf of the relator, applied to the Board of Tax Appeals for authority to issue the bonds in the amount specified, for the purpose stated, which application was granted March 12,1940, upon a finding that such amount did not exceed 70 per cent of the net unobligated delinquent taxes and assessments which were due and owing the city.
 

 Six days thereafter the city council duly enacted the bond ordinance asx an emergency measure. It contained the conditions that the bonds should be the full general obligations of the city, supported by a pledge of the faith, credit and revenue of the city to the payment thereof, and that -there should be levied annually a tax during the ten-year life of such bonds sufficient to meet the principal, and interest at four per cent per annum, with a reduction of such tax by the amount of delinquent taxTes and assessments collected, which could be applied to the payment of the bonds.
 

 Following the passage of the ordinance, the respondent refused to perform the ministerial acts required of him by the terms thereof, which acts it is now sought to constrain by a writ of mandamus.
 

 Several arguments are advanced as to why the writ should be denied. It is contended that no part of the taxes, now delinquent, which were levied to pay specific obligations can constitutionally be diverted for the purpose of the proposed bond issue, as sanctioned by Section 2293-43, General Code.
 

 
 *259
 
 The agreed statement of facts recites that the relator is not in default in the payment of principal and interest on any of its outstanding bonds and notes. This can only mean that these have been met by other available funds, so that taxes originally levied to satisfy them and which are now delinquent and uncollected are free for a different application. And those creditors of the city, inclusive of bondholders, whose claims are not yet due, are not in a position presently to complain concerning the disposition of delinquent taxes which may be collected. In the absence of a contrary disclosure, it may be assumed that provision will be made for them, and in compliance with law.
 

 This court has indicated in more than one decision that no vested rights exist in uncollected taxes. And the General Assembly possesses the power, which was exercised in the enactment of Section 2293-43, General Code, to allow the diversion of delinquent uncollected taxes from the purpose for which they were originally levied, so long as there is no collision with the Constitution.
 

 The mandate of Section 11, Article XII of the Constitution, is satisfied by an annual levy of taxes during the term of proposed bonds in an amount sufficient to pay interest and to provide for their final redemption at maturity. No specific annual amount is stipulated. 33 Ohio Jurisprudence, 49, Section 39;
 
 State, ex rel. City of Columbus,
 
 v.
 
 Ketterer,
 
 127 Ohio St., 483, 189 N. E., 252. When a sufficient amount can be and is levied annually, there would seem to be no constitutional restriction against applying delinquencies occurring at the end of a year, when collected, to any public need.
 

 Another claim advanced is that special assessments can be levied only for specific benefits accruing to real property and the proceeds used solely to pay for such improvements, so that when bonds issued in anticipation of the collection of special assessments are paid,
 
 *260
 
 the assessments later collected must be placed in the fund from which the bonds were satisfied, or repaid to those assessed.
 

 This argument is difficult to follow. We find no applicable statutory enactment as to reimbursement of a fund, nor is any cited. Section 3909, General Code, specifies that in case a larger amount is collected for assessments than is necessary to pay for the same, it shall be returned proportionately to those from whom received.
 

 Here, there is nothing to show that the assessments levied were greater than the actual cost of the improvements. Those delinquents who have not discharged their assessments are scarcely in a position to lay claim to any possible refund, and it is not apparent that those who have paid were charged a larger sum than their share of the cost, and would thus be entitled to reimbursement. Any balance owing for the improvements was allegedly supplied from general taxation moneys; this is uncontradicted.
 

 In assembling the various items, the total of which controls the amount in which poor relief bonds can be issued under Section 2293-43, General Code, the relator listed delinquent assessments on which the bonds had been paid, as authorized. Under the circumstances, it can hardly be maintained that such unpaid delinquent assessments are in any way “pledged,” within the fair meaning of that term, so as to forbid their application when and as collected to the payment of the poor relief bonds.
 

 It is urged that taxes originally levied for firemen’s and policemen’s pensions are in the nature of a trust, and a diversion thereof to other purposes is inhibited.
 

 From the pertinent statutes (Sections 4605 and 4621, General Code), it will be observed that the special levies for firemen’s and policemen’s pensions are current levies to “provide funds for the payment of all pensions.” The taxes thus collected are distributed
 
 *261
 
 currently in the payment of pensions, and in the same manner as the proceeds from any other annual tax. The only “vested right” a pensioner could have would be the receipt of the payments due him by the rules and regulations of the proper pension board.
 

 It is nowhere shown that any recipient of a pension in Cleveland has not received the pension to which he was entitled during any year, regardless of the collection of taxes levied for pensions. Complaint as to the diversion of uncollected taxes, originally levied for the pension funds, is at most theoretical, and what has been previously said as to the disposition of other delinquent uncollected taxes is applicable here.
 

 Of course, contributions, donations and the like, in the pension funds, would constitute a “trust fund” in favor of those directly concerned.
 

 In considering the problems presented by this case, it is important not to lose sight of the fact that taxes on property are levied for the requirements of a
 
 particular fiscal year.
 
 Each taxing subdivision prepares a budget stating its estimated needs and its estimated receipts from sources other than taxes, the difference representing the amount necessary to be levied. It is then the duty of the budget commission to determine what sum, within existing limitations, can be levied for each purpose designated. The computations are then certified to the appropriate authority whose business it is to keep appropriations for the fiscal year within the estimated receipts and balances. If taxes are not realized from the levies during a certain year to meet particular obligations, cognizance is taken of the deficits in tax levies for the succeeding years. Unpaid taxes remain on the books subject to collection and are not considered as potential revenue in constructing the budget requirements for another fiscal year. If there are no other restrictions, taxes can be levied annually to an extent not in conflict with Section 2, Article XII of the Constitution. It would thus seem
 
 *262
 
 that the General Assembly may, without impairing “vested rights,” authorized new uses for delinquent uncollected taxes.
 

 As has already been noticed, Section 2293-43, General Code, in compliance with Section 11, Article XII of the Constitution, insists that “the proper authority of such subdivision shall provide for the levying of a tax sufficient in amount to pay the principal and interest of all such bonds issued under this act.” The relator has complied with this provision and asserts its ability to do so.
 

 The agreed statement of facts fixes the highest millage within the constitutional limitation which might be necessary for debt services in the city of Cleveland and the overlapping subdivisions at 8.9171 mills. It further appears that the highest millage required for the present bond issue for poor relief is .2997 mills, making a total of 9.2168 mills for all purposes; this being within the ten-mill limitation, the principles announced in
 
 State, ex rel. City of Portsmouth,
 
 v.
 
 Kountz, Mayor,
 
 129 Ohio St., 272, 194
 
 N.
 
 E., 869, 97 A. L. R., 1099, are without application.
 

 But the intervenor, the board of education of the Cleveland City School District, whose territory overlaps that of the city of Cleveland, contends that the relator is exceeding its prerogative by preempting a disproportionate share of the available millage in contravention of the intervenor’s rights, the millage to which the relator is entitled being a maximum of 4.4793 mills. Sections 5625-14 and 5625-23, General Code, and the case of
 
 Rabe
 
 v.
 
 Bd. of Edn. of Canton School Dist.,
 
 88 Ohio St., 403, 104 N. E., 537 are cited in support of the claim.
 

 Section 2293-43, General Code, specifically enables a political subdivision taking advantage of it to issue bonds within the limitations and subject to the requirements of that enactment; and to apply to the payment of the bonds delinquent taxes collected, according to
 
 *263
 
 its terms, with a tax levy for the service of the bonds in compliance with the Constitution.
 

 By Section 2293-44, General Code, all other statutes “inconsistent with or prohibiting the exercise of the authority conferred by this act shall be deemed inoperative respecting bonds issued under this act.” As a matter of fact, Section 5625-23, General Code, awards school districts a certain millage from property taxes for current operating expenses within the ten-mill limitation only after debt service and pension fund levies have been deducted. But assuming Sections 5625-14 and 5625-23, General Code,. standing alone, would limit the millage that could he appropriated by the relator, by having invoked Section 2293-43 the relator is entitled to call to its aid Section 2293-44, which is sweeping in its terms and would remove any restrictions imposed by Sections 5625-14 and 5625-23.
 

 The case of
 
 Rabe
 
 v.
 
 Board of Education, supra,
 
 was decided under the so-called Smith One Per Cent Law with its “interior limitations,” now repealed, and holds that a particular political subdivision cannot issue bonds unless they can he serviced within the tax levies which such subdivision can separately command.
 

 However, neither the Constitution nor the statutes presently impose any limitation as to how debt service levies shall he apportioned or restricted among overlapping subdivisions. As the law now stands, it is possible for one subdivision by creating unvoted debt to monopolize the full ten mills to its service. If this is unfair and operates unjustly, the General Assembly is at liberty to remedy the situation.
 

 Relator makes the point that the action of the Board of Tax Appeals in approving the bond issue was final and the respondent, having taken no appeal therefrom, cannot here question the legality of the administrative order. Section 2293-43, General Code, says nothing about the finality of the action of the hoard. Such action was
 
 ex parte,
 
 and no more than administrative
 
 *264
 
 and permissive. It was not made in a judicial,
 
 quasi-
 
 judicial or appellate proceeding, and was therefore not of such a nature as to preclude a contest of the power of the relator to issue bonds in a case of this. hind.
 

 A political, subdivision proceeding to issue bonds for unsecured indebtedness or poor relief under Section 2293-43, General Code, must of course adhere strictly to the terms of the statute, and have the ability to levy a tax within the constitutional ten-mill limitation “sufficient in amount to pay the principal and interest of all such bonds issued. ’ ’
 

 Since the relator has complied with the requirements of Section 2293-43, General Code, in respect to the proposed bonds, and since neither the Constitution nor the statutes present impediments to the issuance thereof, the duty rests upon the respondent to comply with the demands of the relator as set forth in the petition and the writ of mandamus is therefore allowed.
 

 Writ allowed.
 

 Weygandt, C. J., Day, Williams, Matthias and' Habt, JJ., concur.