Bell, J.
The question involved herein may be simply stated as follows: Does the statutory debt limitation in effect at the *34 time a bond issue is authorized by the electors of a village apply to bonds sought to be issued at a later time under such authorization when that debt limitation has been statutorily increased?
The Court of Appeals, in allowing the writ, relied upon two provisions of Section 133.15, Revised Code, which read as follows:
“Bond or notes * * * which are issued within the debt limitation of a subdivision for a portion of the amount authorized by such election shall be valid and in no manner affected by the fact that the balance of said bonds or notes * * * cannot be issued by reason of such bonded indebtedness,” and “the limitations of this section do not apply to any bonds authorized if ten per cent of such bonds authorized by the electors of any subdivision * * * have been issued and sold.”
We do not interpret Section 133.15, Revised Code, as applicable in the situation here presented. In our opinion this 10% provision was intended to apply to the situation where there might be a decrease in the tax duplicate valuations which would prevent the issuance of bonds in the full amount authorized. The prior issuance of 10% would, in that instance, permit the subsequent issue of the remainder authorized. We do not interpret it as permitting the issuance of bonds in excess of the percentage of valuation allowed by statute at the time of the authorization.
A similar situation was before this court in Kurtz, a Taxpayer, v. City of Columbus, 137 Ohio St., 184, 28 N. E. (2d), 587. In that case the electors of the city of Columbus had authorized the issuance of certain bonds and they had been issued to the limit allowable by law. In attempting to issue more bonds the city relied upon a subsequent act of the G-eneral Assembly which purported to give authority for the issuance of bonds beyond the statutory limit in effect at the time the bond issue was authorized, provided the proceeds from such bonds were to be used to construct public improvements aided in any way by the United States of America. This court held that, being retroactive in its operation and effect, such statute was violative of Section 28, Article II of the Constitution.
*35 In the opinion in the Kurts case, Judge Matthias said:
“* # * In this case, money was being borrowed and taxes levied which necessarily would be beyond the one and one-half per cent limitation and such approval by the electors was therefore necessary. Such vote constitutes an essential grant of authority. It is the only means by which, under the conditions presented here, a municipality or subdivision of the state can acquire authority to borrow the money and levy the taxes to pay the debt. It is a grant of authority by the people under the laws in effect at the time of the election.
“Authority so granted must be strictly construed. If it were to be otherwise considered and the Legislature were to have the power to change the debt limitations after a vote with the result that the authorized bonds would exceed the statutory limitations in effect at the time of the election, it would then follow that the voters thereby authorize a program of improvements and consequent bonded indebtedness at their peril, for it would be subject to any future extension or increase in such indebtedness as the Legislature might see fit to provide, though entirely beyond that contemplated by the electors when the authority was conferred.” (Emphasis added.)
We believe the rationale of the Kurts case to be equally applicable here. To permit the issuance of bonds in the amount allowed by the present form of the statute would be to give that statute retroactive effect, increasing the indebtedness of the village beyond that which the voters authorized at the time the issue was proposed.
The position of those who would like to see the street improvement finished is provocative of sympathy. And it may well be true, as argued to this court, that the electors of the village knew at the time they approved the bond issue that they were voting for more than the statute allowed, but that they were nevertheless willing to do so in the hope that the tax duplicate valuations would be increased by the time the bonds were issued or that the Legislature would increase the percentage limit. And it may seem a useless thing, if those people are still willing to do so, to make them go through the throes of another bond issue and election to approve the is *36 suance of sufficient bonds to finish the job or to confine them to the issuance of bonds only in the amount that have already been retired.
But we believe the law of this state to be as announced in the Kurtz case, and we, therefore, hold the Court of Appeals was in error in allowing the writ. The judgment of the Court of Appeals is, therefore, reversed and final judgment rendered for respondent.

Judgment reversed.

Taft, Matthias and O’Neill, JJ., concur.
Weygandt, C. J., Zimmerman and Herbert, JJ., dissent.