Herbert, J.
In 1955, the G-eneral Assembly amended Section 2101.39, Revised Code, which now reads as follows:
*313 “When a probate judge has a prejudice, either for or against a party or his counsel in a matter or cause pending before him, or is otherwise interested in such cause or matter, or disqualified to sit therein, but the prejudice, interest, or disqualification is not such as to permit or require certification of the proceedings to the Court of Common Pleas as provided by Section 2101.38 of the Revised Code, any party to such cause or matter, or the counsel of any such party, may file an affidavit setting forth such prejudice, interest, or disqualification. The fact of the filing of such affidavit shall be entered upon the record of the court. The judge may upon his own motion make an entry setting forth such prejudice, interest, or disqualification.
“Forthwith upon the filing of such affidavit or the making of such entry the judge shall notify the Chief Justice of the Supreme Court who, if satisfied that such prejudice, interest, or disqualification exists, shall assign some probate judge or some judge of the Court of Common Pleas to hear the cause or matter in place of such probate judge. The judge assigned shall proceed and try such cause or matter. The affidavit referred to in this section shall be filed not less than three days prior to the time set for the hearing of such cause or matter.” (Emphasis added.)
The amendment consists solely of the above italicized words, “some probate judge or.”
The question here may be phrased in this language:
Is the legislation, i. e., Section 2101.39, Revised Code, authorizing and empowering the Chief Justice of the Supreme Court to assign a probate judge of one county to preside in the Probate Court of another county, contrary to provisions of the Constitution of Ohio?
We are in complete agreement with the decisions and authorities cited in the brief of the prosecuting attorney that a legislative act is presumed to be valid. State, ex rel. Dickman, a Taxpayer, v. Defenbacher, Dir., 164 Ohio St., 142; City of Xenia v. Schmidt, 101 Ohio St., 437; State, ex rel. King, Pros. Atty., v. Sherman, Aud., 104 Ohio St., 317; and State, ex rel. City of Columbus, v. Ketterer, 127 Ohio St., 483.
Before this, or any other court in Ohio, may hold that an *314 enactment of the Genera] Assembly is unconstitutional, such infirmity must appear beyond a reasonable doubt. State, ex rel. Dickman, v. Defenbacher, supra.
The cornerstone of the state government structure is the principle that all power is inherent in the people. The people, by the adoption of proposals of constitutional conventions and of separate proposals submitted by the General Assembly to the people, have created the present state Constitution that expressly or by implication delegates certain powers to various political subdivisions, boards, commissions and officers.
However, the people are firm in their retention of undelegated powers. In Section 20, Article I of the Constitution of 1.851, the people cautioned:
“This enumeration of rights shall not be construed to impair or deny others retained by the people; and all powers, not herein delegated, remain with the people.”
This section was adopted from Section 28, Article VTII of the Constitution of 1802, which read:
“To guard against the transgression of the high powers, which we have delegated, we declare, that all powers not hereby delegated, remain with the people.”
Section 1, Article II of the present Constitution, provides: “The legislative power of the state shall be vested in a General Assembly consisting of a Senate and House of Representatives * * *.”
Then follows language of limitation and restriction upon the power of the General Assembly and the establishing of procedure for the people to exercise certain powers directly.
The Constitution, in Section 8, Article IV, confers jurisdiction upon the Probate Court, as follows:
“The Probate Court shall have jurisdiction in probate and testamentary matters, the appointment of administrators and guardians, the settlement of the accounts of executors, administrators and guardians, and such jurisdiction in habeas corpus, the issuing of marriage licenses, and for the sale by executors, administrators and guardians, and such other jurisdiction, in any county or counties, as may be provided by laiv.” (Emphasis added.)
The migratory jurisdiction, if any, conferred upon the Pro *315 bate Court must depend upon the construction given to the italicized language quoted supra.
In Giesy v. Cincinnati, Wilmington & Zanesville Rd. Co., 4 Ohio St., 308, the delivering judge, at pages 320 and 321, discussed the meaning to be given the italicized language, as follows :
“This jurisdiction, it is evident, must depend upon a proper construction of the last clause of the section, which was added to the original draft by way of amendment, and is not very happily expressed. It is not doubted that the General Assembly might confer this jurisdiction in one or more counties; but it is said it must be conferred by a special or local law, and cannot be extended to all the counties of the state by a general enactment. The Legislature has uniformly construed it differently. Not only the act now drawn in question, but the act investing that court with jurisdiction in minor offenses, are general laws extending to all the counties. This repeated expression of opinion on the part of the legislative body is not only entitled to great respect, but is absolutely binding upon us, until it is made unquestionably to appear that they have mistaken their powers, and a clear incompatibility between the Constitution and the law is established. 1 Ohio, 77.”
We are far from convinced that any such incompatibility exists in the case at bar.
The General Assembly, over a period of years, has enacted general laws conferring jurisdiction upon the Probate Court and has clearly indicated that it had the constitutional power and authority to do so. It has conferred jurisdiction upon the Probate Court that carried with it ever increasing responsibilities in a rapidly growing and expanding society.
For example, Section 2151.07, Revised Code, provides that “the Chief Justice of the Supreme Court shall assign a judge of the Court of Common Pleas, a juvenile judge, or a probate judge from some other county to act in place of * # * ” a juvenile judge. This is clearly a grant of migratory jurisdiction to a probate judge.
Section 2101.37, Revised Code, was amended in 1949 to provide that under certain conditions a probate judge “may call upon the Chief Justice of the Supreme Court, who shall desig *316 nate a judge of the Court of Common Pleas, or a probate judge to act in the place of such absent or incapacitated probate judge.” This is another expression of opinion by the General Assembly that it had the power to confer migratory jurisdiction upon a probate judge.
Section 2301.121, Revised Code, effective August 27, 1957, provides:
“When the common pleas judge of any county is absent, or is unable to attend court, or the volume of work in his office necessitates it * * * he may call upon the Chief Justice of the Supreme Court, who shall designate a judge of the Court of Common Pleas or a probate judge to act in the place of such absent or incapacitated common pleas judge * * *.” (Emphasis added.)
Again the General Assembly believed that it had constitutional authority to assign a probate judge to perform the duties of a judge of the Court of Common Pleas.
Legislative power and authority to confer migratory jurisdiction upon probate judges has long been established and recognized as valid.
In 1935, the General Asembly, recognizing the growing importance of the Probate Court in the administration of justice, enacted legislation requiring that probate judges (with certain saving clauses) must be lawyers.
In 1947, the people adopted an amendment to Section 7, Article IY of the Constitution, increasing the term of office of probate judges from four to six years and, in a 1951 amendment, recognizing that probate judges were performing duties extending beyond the boundaries of the county in which they were elected, provided that the state should assume part of the payment of the salary of probate judges. By so doing, it may be reasoned that the people recognized that the migratory jurisdiction of probate judges increased their responsibility to the state, that they were officers of the state, and that their jurisdiction, under certain conditions, extended beyond the confines of a single county. Furthermore, since 1953 the salary of the probate judges has been the same as that of the judges of the Court of Common Pleas, when assigned by the Chief Justice to *317 sit in a county other than their own. Section 2101.37, Revised Code.
It seems quite clear that the clause of Section 8, Article IV of the Constitution, reading, ‘ ‘ and such other jurisdiction, in any county, or counties, as may be provided by law,” extends the jurisdiction of the probate judges to some or all of the counties of the state as the General Assembly may determine. Whether this jurisdiction should be extended by special or general laws is not material to the determination of the question here.
It is our conclusion that appellee has failed to establish that the enactment of the General Assembly, Section 2101.39, Revised Code, is violative of the Constitution beyond a reasonable doubt; that there is not a clear incompatibility between the Constitution and the law; and that it is not made to appear unquestionably that the General Assembly has mistaken its power by its repeated enactments in respect to the Probate Court, its functions and jurisdiction. These conclusions are reached by applying the various tests of constitutionality set out in the decisions of this court, some of which are cited herein.
Furthermore, the people, by adopting proposals of the various constitutional conventions and their adoption of individual amendments to the Constitution, have given express recognition of the power of the General Assembly to confer migratory jurisdiction upon the Probate Court by extending the term of office of probate judges, by making such judges state officers and by raising their qualifications and increasing their authority.
For many years probate judges, sitting as common pleas judges, have exercised the full jurisdiction of the Court of Common Pleas. These probate judges in that capacity have sentenced convicted defendants to the penitentiary and, no doubt, have imposed the sentence of death upon others. These various judges have exercised the jurisdiction of the Common Pleas Court over- property and property rights. They have presided, at trials where the state, as well as subdivisions and other authorities, has exercised the power of eminent domain. To hold now that the migratory jurisdiction exercised by probate judges for many years is contrary to the Constitution would tend to *318 create doubt, confusion, and possibly chaotic conditions in the whole field of the administration of justice.
It follows that the judgment of the Court of Appeals must be, and it hereby is, reversed, and the cause is remanded for further proceedings according to law.

Judgment reversed.

Tart, C. J., Zimmerman, Younger, O’Neill and Griffith, J J., concur.
Gibson, J., concurs in the syllabus and in the judgment.
Younger, J., of the Third Appellate District sitting by designation in the place and stead of Matthias, J.